4 w s 201
192  341.

## M'Cullough *against* Grishobber.

A domestic attachment may issue upon a debt which is not due and payable, if there be in other particulars a sufficient ground for it.

When process issued is legal, the plaintiff is answerable only for a malicious abuse of it; and where the circumstances afford no inference of malice, actual malice must be proved.

In an action for maliciously suing out a writ of domestic attachment, it is enough for the defence that the suspiciousness of the plaintiff's conduct had made recourse to an attachment a measure of reasonable precaution, irrespective of the fraudulent intention of the debtor.

ERROR to the Common Pleas of *Venango* county.

George Grishobber against Michael M'Cullough and James Black, trading in the name of M'Cullough & Co. This was an action against the defendants for maliciously suing out a writ of domestic attachment against the plaintiff.

The facts were substantially these:—On the 8th of July 1838, the plaintiff purchased from the defendants, at Pittsburgh, goods to the amount of $686, on a credit of six months; representing at the time of the purchase that he resided in Venango county, and was to take the goods there for retail. About these representations, there was some conflicting testimony. It appeared, however, that the plaintiff had the goods boxed up and put on board of a boat and went down the Ohio; a direction opposite from where he resided, and where his family was. The defendants, on learning this, went to Venango county, and on the 11th of July 1838 sued out a domestic attachment, upon which all the defendant's land, goods and chattels, were levied and appraised, his land at $1000 and his goods at $498.70. Soon after, on the 6th of August 1838, the sheriff sold that part of the property which was perishable for $147.47. About this time the plaintiff returned and brought this action; after which the domestic attachment case was settled. There was much testimony given by the plaintiff on the subject of the injury done to his property and credit by the proceedings against him.

In answer to points put by the plaintiff and defendants, the court below thus charged the jury:—

" The question to be determined by you is, whether the plaintiff, by his own acts, placed himself in a situation that made his property subject to the provisions of the law relating to domestic attachments. If he did, he has no right to complain, nor can he recover in this suit. The Act of the 13th of June 1836, provides that when any debtor shall abscond from the place of his usual abode, or shall have remained absent from the Commonwealth, or

IV. — 26

[M'Cullough v. Grishobber.]

shall have confined himself within his own house or concealed himself elsewhere, with a design in either case to defraud his creditors, a domestic attachment may issue.   The question for the jury in this case is, whether the plaintiff absconded from his usual place of abode in this State, or remained absent, with a design in either case to defraud his creditors.   That the plaintiff left the State is not denied, and remained absent some time; but it is denied that he had an intention to defraud his creditors, and this question is for the jury; and to determine which, they must take into consideration all the circumstances of the case given in evidence.   If the jury believe from the evidence that the plaintiff did not abscond or remain absent with an intent to defraud his creditors, their verdict should be for the plaintiff.   Even if the jury are satisfied from the evidence that the plaintiff made false representations to the defendants to induce them to sell him the goods on six months' credit, their verdict should be for the plaintiff, if they do not believe that he absconded or remained absent with intent to defraud his creditors: for although this would enable the defendants to treat the contract as a nullity and void, and to sue him for the money at once, it does not follow that they could proceed against him by attachment, which can only be done where the party does such acts as brings him within the provisions of the Act of Assembly relative to attachments.

*Pearson*, for plaintiff in error, argued that the evidence of the conduct of the plaintiff was abundantly sufficient to justify the defendants in suing out the writ of attachment.   They could have had no malice against him, and none was proved: it was a measure of precaution to save that which the conduct of the plaintiff induced them to believe would otherwise be lost.

*Snowden* and *Galbreath, contra.*   The plaintiff was ruined by the wanton conduct of the defendants in suing him for a debt which was not due, and by a process peculiarly calculated to do him the greatest injury, and while he was absent.   Whether it was maliciously done, or whether the conduct of the defendants was justified, were matters of fact which were referred to the jury, and could be only determined by them.   Wantonly suing out process is of itself malice.   8 *Watts* 240; 14 *Serg. & Rawle* 386.

The opinion of the Court was delivered by

GIBSON, C. J.—A foreign attachment which, like outlawry, is a process to enforce an appearance to a personal action, can be legally sued out only for a debt presently demandable; and it was held in *Pratt* v. *Stryer*, (1 *P. A. B.* 282), that even a domestic attachment, which, like a commission of bankruptcy, is a process of distribution among creditors, can be legally sued out only at the instance of a creditor who has a present right of action against

[M'Cullough v. Grishobber.]

the person of the debtor. The report of that case is summary, and the reason given for the judgment unsatisfactory. The tenth section of the statute then in force, like the thirty-fifth section of the present statute, allowed creditors to come in for debts not due; but because the provision was borrowed from the British bankrupt laws, under which such a creditor could not petition, the court thought he could not proceed against an absconding debtor under our attachment law. It is by no means certain, however, that the construction put on the bankrupt laws, was the proper one. In *Hurst* v. *Brown*, (*Peake's N. P. Ca.* 54), Lord Kenyon said that all debts, due or undue, might support a commission; but that case was overruled by *Hawkins* v. *Duperoy*, (9 *East* 489), and *Parslow* v. *Dearlove*, (4 *Taunt.* 200), in consequence of which it became necessary to enact the 6 *G.* 4, *c.* 14, to do away with the discrepance and put the law on the reasonable footing of allowing every creditor to petition without regard to the falling due of his debt. But decisions on bankrupt laws containing peculiar enactments, are blind guides to the interpretation of laws which constitute a system remotely analogous. The purview of our statute is as broad as words can make it. " Writs of domestic attachment," it is enacted, " may be issued by the Court of Common Pleas of the county in which any debtor, being an inhabitant of this Commonwealth, may reside, if such debtor shall have absconded from the place of his usual abode within the same, or shall have remained absent from this Commonwealth, or shall have confined himself to his house or have concealed himself elsewhere, with a design, in either case, to defraud his creditors : but no such writ shall be issued except on oath or affirmation, previously made by a creditor of such person, of the truth of his debt." The last clause contains the only condition prescribed by the legislature; and what authority have the courts to prescribe another? The same justice which requires that an immature debt be admitted to a dividend, requires that the creditor be allowed to originate the process. What matters it who originates it? Some one must move in the business; and if only those who had a present right of action could do so, cases might occur in which no one would be qualified or willing, and in which the fraudulent purpose might, for that reason, be effected. It is a postulate of the statute, that the debtor has not only withdrawn his person from the process of the State, but that he means to withdraw his effects also; and it would be a narrow construction that would compel the creditor to remain a passive and powerless spectator of his measures.

If then the defendants were competent to sue out the attachment, or, in other words, if the writ was not originally illegal, little more remains to be decided; for it is conclusively settled, that where the process is legal, the plaintiff is answerable only for a malicious abuse of it; and that where the circumstances afford no inference of malice, as in *Gibson* v. *Chaters*, (2 *Bos. & Pul.* 129),

[M'Cullough v. Grishobber.]

actual malice must be proved. Of actual malice, in this case, there is not a shadow; and what are the circumstances? The plaintiff below, who is an inhabitant of Venango county, came to Pittsburgh to lay in groceries for a store to be set up, as he said, in the neighbourhood of his residence; and on the confidence reposed in his story, he got credit for groceries purchased from the defendants at six months, as well as for drugs purchased from Holmes & Kidd. He directed the casks and packages to be marked with his name, but not with any place of destination; and ordered them to be sent to Upperman's cellar, alleging that, as he purposed to send his own team for them, and the teamster was a German, the arrangement would preclude mistakes from his ignorance of the English language. The goods were sent there; but the defendants soon afterwards discovered that instead of being taken to the place of the plaintiff's residence, they were secretly put aboard of a steamboat and taken in an opposite direction to Louisville in Kentucky. Surely this was food for apprehension, even to surfeiting; and under its influence, the defendants sued out the attachment. The consequences were peculiarly disastrous to the plaintiff; but his folly, or his falsehood was to blame for them. Who can say that he would have returned to the State had not his property been seized? It happened to be sufficient for his debts; but what assurance had the defendants that it would be left to answer them? The judge took the legality of the writ for granted, but erroneously put the cause on the question of fraudulent intention, it being enough for the defence that the suspiciousness of the plaintiff's conduct had made recourse to an attachment a measure of reasonable precaution. There was indeed some little conflict of evidence in regard to his representations at the time of the purchase; but that, and not a design to abscond with the goods, was the matter to be left to the jury. A few minor points have been raised; but as the determination of the principal point is decisive, it is unnecessary to examine them.

Judgment reversed, and *venire de novo* awarded.